882 P.2d 1266 (1994)
In the Matter of C.A.S., DOB: 6/10/77 and P.K.S., DOB: 11/21/81 Minors Under the Age of Eighteen (18) Years.
B.S., Appellant,
v.
STATE of Alaska, Appellee.
No. S-5064.
Supreme Court of Alaska.
October 21, 1994.
*1267 Blair McCune, Asst. Public Defender, John S. Salemi, Public Defender, Anchorage, for appellant.
Lisa Nelson, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.
Jacqueline Bressers, Anchorage, for guardian ad litem.
Pamela Finley, Legislative Affairs Agency, Juneau, for amicus curiae.
Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, Justice pro tem.[*]
PER CURIAM.
Challenged in this case is a superior court order directed to the mother of two children in state custody. The order arose out of the following facts.
B.S. is the mother of C.A.S. (the daughter), born June 10, 1977, and P.K.S. (the son), born November 21, 1981. In August 1990, the Department of Health and Social Services, Division of Family and Youth Services took emergency custody of the children. The division filed a child in need of aid (CINA) petition on August 19, 1990; a guardian ad litem was appointed for both children on August 21, 1990. The parties had stipulated to the mother's inability to take care of the children.
On July 17, 1991, when she was fourteen years old, the daughter left her foster home during the night. She subsequently went to a hospital for treatment, alleging that she had just been raped by an acquaintance. She further stated that she had been molested twice in the past by her foster father. The division responded by placing her and her brother in a new foster home.
A social worker for the division filed an affidavit informing the court of the incident a week later. The mother also learned of the incident, although the record is silent as to how she learned.
On August 30, 1991, a social worker for the division told the guardian ad litem that the mother was releasing confidential information to her legislator and to the staffs of the lieutenant governor's and governor's offices. The social worker and guardian met with both children on September 4, 1991. The guardian's affidavit states that the daughter "was quite angry with her mother, and very embarrassed that so many people now knew about her personal life." The daughter felt "like her privacy ha[d] been invaded. [She wanted] virtually no contact with her mother." The guardian's affidavit also declares that on September 18, 1991, the mother took the son with her on a visit to see a state representative and two men from the ombudsman's office.
*1268 On September 30, 1991, the guardian filed a petition for a temporary restraining order, preliminary injunction, and injunction to prevent the mother from releasing confidential information to "individuals who are not parties to the case," namely, to the representative, the governor, the lieutenant governor and their staffs.
Following a hearing, Judge Elaine Andrews entered the order set forth below:
2. The mother may not take the children, either or both of them, with her when she seeks to petition to redress her grievances in whatever manner, without the specific permission of the court to do so. She may not use them in any way to petition her government for redress.
3. The mother may petition her government for redress, but may not release the names of the children or information, written or oral, generated by the child in need of aid proceedings without specific permission from the court. She may complain in a generic way, and she may give the initials of the case caption and the case number, both of which are public information, which will allow an agency or legislator to seek information if they desire to do so from the court.
4. The mother shall exhaust her remedies for grievances within the normal channels available to her in the circle of confidentiality. If that is unsuccessful, she may come to the court with a petition to release information she feels she must release in order to seek further help, and the court will balance the equities in making a decision about what to allow her to release or not to release.
After the mother's motion for reconsideration was denied, she appealed.
A statutory amendment directly pertinent to this case requires that all but the first sentence of paragraph two of the order no longer be given prospective effect. AS 47.10 was amended in 1994 by adding a new section, AS 47.10.092(a), which provides that a parent in a CINA proceeding may disclose confidential information to the governor, the lieutenant governor, a legislator, and their staffs for use in their official capacity.[1]
The first sentence of paragraph two is based on the right of the division and the guardian, rather than the mother, to exercise physical control of the children. AS 47.10.084. In the Matter of D.P., 861 P.2d 1166 (Alaska 1993). It is not affected by AS 47.10.092(a), and no cogent argument has been made that the court's enforcement of this right is illegal or an abuse of discretion.[2]
Except for the first sentence of paragraph two, the order is VACATED.
COMPTON, Justice, dissenting.
Tentatively I agree with the court's conclusion that if newly enacted AS 47.10.092(a) is applied to the facts of this case, little of the order concerning release of information can be sustained. However, the parties have not had an opportunity to address the applicability of the statute to the case.
B.S., the minors' mother, has argued in a post-briefing notice to the court that the issues in the case are not moot because of the newly enacted statute. She suggests that "[i]f this court wishes to have further briefing or argument on mootness, [she] will be happy to provide it." The guardian ad litem for C.A.S. and P.K.S. concurs, stating that "[t]he *1269 amendment has no specific provision for retroactive application. Other issues raised in the appeal remain unaffected by the amendment." Neither the State of Alaska nor the Amicus Curiae has responded. Despite the protestations of two of the parties that the statute is not determinative of the issues raised, the court sua sponte determines that the statute applies to the case. The court then determines the rights of the parties based on the statute.
Further, I do not believe that the issue of application of AS 47.10.092(a) to the case is the end of the matter. Through their guardian ad litem, C.A.S. and P.K.S. assert that the order concerning release of information protected their right to privacy under the Alaska Constitution. See Alaska Const. art. I, § 22. Indeed, C.A.S. and P.K.S., as well as the superior court, predicated the propriety of the order in part on the Alaska Constitution. Alaska Statute 47.10.092(a) may infringe upon this right. As with the applicability of the statute, the parties have not had an opportunity to address the constitutionality of statute.
An informed analysis of the statute might not affect the present resolution of the case. However, if the statute were declared unconstitutional, the rationale and the holding of the case would be markedly different. The superior court balanced the mother's right to redress of her grievances with her children's right to privacy.[1] Thus the parties should be directed to address whether AS 47.10.092(a) applies to this case, and if so, whether it impermissibly infringes on C.A.S.'s and P.K.S.'s constitutional right to privacy.
The case before us stands in stark contrast to Gilmore v. Alaska Workers' Compensation Board, 882 P.2d 922 (Alaska 1994). In Gilmore this court sua sponte directed the parties to brief the constitutionality of the statute under consideration, even though neither party had questioned its constitutionality. Without ever addressing whether Gilmore was erroneously denied compensation benefits under the statute as we might have construed it, the court simply held the statute unconstitutional. I disagreed with the court's disregard of the doctrine of judicial abstention in that case, but at least the court gave the parties the opportunity to brief the issue it raised. Moreover, constitutionality of the statute is directly implicated in this case, yet the court ignores the issue.
I continue to disagree with the court's ad hoc approach to the doctrine of judicial abstention. I firmly believe that we should abstain from addressing constitutional issues when resolution of those issues will not change the result of the case. In a similar vein, I do not agree that this court should resolve a case on any issue neither raised nor briefed. Yet unlike its posture in Gilmore, here the court does not even deign to solicit the parties' views on either the applicability of the statute or its constitutionality. The inconsistency of the court again presents the specter of arbitrariness and favoritism.
The superior court found it apparent from the pleadings "that there has already been and will continue to be irreparable harm to [C.A.S.] by the release of information by the mother," and "there may be irreparable harm to [P.K.S.] by his being subjected to interviews and questioning by untrained persons concerning problems he might have in foster care." These findings are challenged by B.S. on procedural and substantive grounds. However, the court evades the challenge, and the consequences that may follow if it is unpersuasive, by applying its unsolicited interpretation of the newly enacted statute. In view of the possible consequences of this decision, the court should not hesitate to examine the issues fully.
Gilmore's right to compensation benefits is surely important. However, the right of a child whose life has been found to have been irreparably damaged by her mother's disclosure of personal, embarrassing, and arguably constitutionally private information seems no less important. If briefing by the parties *1270 was necessary in Gilmore, surely it is also necessary in this case.
NOTES
[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.
[1] AS 47.10.092(a) provides:

Notwithstanding AS 47.10.090, a parent or legal guardian of a minor subject to a proceeding under AS 47.10.010  47.10.142 may disclose confidential or privileged information about the minor, including information that has been lawfully obtained from agency or court files, to the governor, the lieutenant governor, a legislator, the ombudsman appointed under AS 24.55, the attorney general, and the commissioners of health and social services, administration, or public safety, or an employee of these persons, for review or use in their official capacities. A person to whom disclosure is made under this section may not disclose confidential or privileged information about the minor to a person not authorized to receive it.
[2] The second sentence of paragraph two, in addition to conflicting with the new enactment, is so vague as to be constitutionally infirm in so far as it relates to conduct which does not involve physically controlling the children.
[1] In Breese v. Smith, 501 P.2d 159 (Alaska 1972), we examined the hair length regulation of a public school. In striking the regulation as in conflict with the constitutional right to liberty, we reiterated our position "that children are possessed of fundamental rights under the Alaska constitution." Breese, 501 P.2d at 167.